## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **JAMES A. HENSON, #331-667,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. RWT-14-0340 |
| | * | |
| **RONALD SHANE WEBER,**[1] ***et al*.,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

### MEMORANDUM OPINION AND ORDER

Pending is Defendant Ronald Shane Weber's Motion to Dismiss, or in the Alternative Motion for Summary Judgment. ECF No. 21. The Court has reviewed the Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons presented below, the Court grants the Motion.

### BACKGROUND

On October 28, 2013, Henson filed an administrative remedy procedure ("ARP") with the Warden of the Western Correctional Institute ("WCI"), alleging that the mental health and hygiene psychological staff refused to treat him or refer him to a specialist. ECF No. 21-2, at 3 (referring to ARP WCI-1640-13). Henson further alleged that the medical staff and Division of Corrections deliberately falsified his records and only allow white inmates access to certain services, such as chronic care specialists, complete physicals, and Magnetic Resonance Imaging ("MRI") tests. *Id*. Henson maintains that this disparate treatment, in addition to alleged limitations on his out-of-cell recreation, constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Id*.

---

[1] The Clerk shall be directed to amend the docket to reflect the correct name of Defendant.

The administrative remedy coordinator dismissed the ARP on November 1, 2013 for containing "multiple unrelated issues," and directed Henson to resubmit a proper ARP by November 16, 2013. *Id*. Rather than resubmitting the ARP to the Warden for resolution at the institutional level, however, Henson filed an appeal to the Commissioner of Correction at division headquarters on November 19, 2013. *Id*. In this appeal, Henson complained that he was assigned to a cell with improper air flow which impeded his legal efforts, that his sick calls slips were destroyed, that he was denied sick call, and that his medical records were falsified. *Id*. The administrative remedy coordinator dismissed the appeal for failure to follow proper procedure for an administrative remedy, as directed, by resubmitting the ARP to the Warden. *Id*.

Henson filed the instant Complaint against "Shane" Weber and "the entire WCI Mental Health and Hygiene Psychological Medical staff,"[2] alleging they falsified medical records and denied him medical treatment for high blood pressure and diabetes, a complete physical with MRI, and referral to chronic care specialists. ECF No. 1. Henson further alleges that the judicial system is corrupt and that the mental health staff, generally, have witnessed Henson being beaten, maced, and harassed by Defendants at Western Correctional Institute ("WCI") and North Branch Correctional Institution ("NBCI").[3] ECF No. 5.

The sole named Defendant amenable to suit in this matter, Ronald Shane Weber, is a Mental Health Professional Counselor Supervisor at WCI. ECF No. 21-2, at 1–2. Weber has provided copies of Henson's relevant medical records demonstrating Henson has been seen regularly by medical staff at WCI—including twenty-two separate appointments with medical staff during the period from November 2013 to September 2014. ECF No. 21-3. Henson's

---

[2] Plaintiff's Complaint against "WCI Mental Health and Hygiene Psychological Medical staff" shall be dismissed as no such entity is amenable to suit under 42 U.S.C. § 1983.
[3] Plaintiff states that on November 16, 2008, April 5, 2011, September 2–3, 2011, and September 11, 2013, medical staff would not treat or document his injuries. ECF No. 5

medical records also demonstrate that Henson is a difficult patient who regularly refuses to cooperate with medical personnel—refusing both to be seen by medical staff and to follow their recommended treatment on at least twenty-one separate occasions during the same period from November 2013 to September 2014. *Id.*

Weber acknowledges that Henson has filed numerous complaints alleging he is at risk of assassination by a conspiracy of racist correctional officers and gang members, and that mental health staff have failed to take corrective action. *Id.* All of his claims have been investigated and found unsubstantiated, resulting in their dismissal both administratively and judicially.[4] *See Henson v. Likin*, Civil No. RWT-11-2719 (D. Md. Aug. 9, 2012) (alleging assault by staff and assignment to cells with gang members); *Henson v. Miller*, Civil No. RWT-12-0763 (D. Md. July 16, 2013) (alleging assault by inmate who was aided by staff and assignment to a cell with an alleged "professed racist"); *Henson v. Lambert*, Civil No. RWT-12-3271 (D. Md. Aug. 2, 2013) (alleging assignment to cells with gang members and assault by a correctional officer); *Henson v. Smith, et al.,* Civil No. RWT-13-2266 (D. Md. Mar. 25, 2015) (alleging an overarching conspiracy and failure to protect, and lack of a policy to address risks to Henson's health and safety); *Henson v. Graham, et al.*, Civil No. RDB-14-2058 (D. Md. May 28, 2015) (alleging misconduct, racial bias, use of excessive force, failure to install video cameras, and conspiracy against African American inmates).

---

[4] *Res judicata* is established where, as here, there has been a final judgment on the merits in a prior suit, an identity of the cause of action in both the earlier and the later suit, and an identity of parties or their privies in the two suits. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does *res judicata* bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* (quoting *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989)).

**STANDARD OF REVIEW**

I.      **Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of the  plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563.  The Court need not, however, accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events.    *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989); *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

II.     **Motion for Summary Judgment**

Summary Judgment is governed by Rule 56(a) of the Federal Rules of Civil Procedure which provides that:

> The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).  The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644–45 (4th Cir. 2002).  The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson,* the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322–23.  Therefore, on those issues on

which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## DISCUSSION

Henson has failed to identify any specific action in violation of his rights by the sole named Defendant, Ronald Shane Weber, that is amenable to suit in this matter.  ECF No. 21-2, at 1–2.  To the extent Henson alleges Weber deliberately denied him medical treatment and falsified his medical records, Weber denies those allegations.  *Id*.  Furthermore, Weber raises the affirmative defense of non-exhaustion and asserts that Henson's claims have not been properly presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. §1997e.  ECF No. 21.

### I.    Henson's claims are dismissed for failure to exhaust administrative remedies.

The Prisoner Litigation Reform Act (the "PLRA") provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e.  As a prisoner, Henson is subject to the strict requirements of the exhaustion provisions.  It is of no consequence that Henson is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (finding no distinction, with respect to the exhaustion requirement, between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion of the administrative remedy procedures is required, even though the relief sought is not available through the process itself.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered

through administrative procedures."). A claim that has not been exhausted may not be considered by this Court. *Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner, and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). It is well settled that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

> Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore*, 517 F. 3d at 725.

Thus, the Court must dismiss Henson's claims if Weber raises failure to exhaust as an affirmative defense and proves that Henson has failed to exhaust available remedies. *Jones*, 549 U.S. at 216–17. The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *see also Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Moore*, 517 F. 3d at 725 (clarifying that "exhaustion" means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a

prisoner must appeal administrative rulings "to the highest possible administrative level");

*Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (finding that a prisoner must follow

all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The evidence demonstrates that Henson filed an ARP, which the administrative remedy

coordinator dismissed for procedural reasons—because it contained "multiple unrelated issues."

ECF No. 21-2, at 3.  Henson appealed, rather than resubmit the ARP as directed.  *Id*.  The appeal

contained multiple claims that did not align with the original ARP, and was likewise dismissed

for procedural reasons.  *Id*.  Henson failed to exhaust administrative remedies, and thus his

claims are subject to dismissal.

## II.    Even if Henson had exhausted his administrative remedies, he has not indicated any specific conduct by Weber that supports an Eighth Amendment claim.

As interpreted by the Supreme Court, the Eighth Amendment prohibits "unnecessary and

wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the

Eighth Amendment is not limited to those punishments authorized by statute and imposed by a

criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003).  In the context of

denial of medical care, an Eighth Amendment violation arises when the actions of the

defendants, or their failure to act, amounts to deliberate indifference to a serious medical need.

*See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).  Deliberate indifference to a serious medical

need requires proof that the prisoner plaintiff was objectively suffering from a serious medical

need, of which the prison staff were subjectively aware needed medical attention, but failed to

either provide medical attention or ensure the needed care was available.  *See*

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be objectively serious.  *See*

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that society does not expect that prisoners

will be provided with *unqualified* access to health care).  However, proof of an objectively serious medical condition does not end the inquiry, as the subjective component requires "subjective recklessness" in the face of the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflictor . . . becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Virginia Beach Corr. Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995) (internal citations marks omitted).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  The Court must judge the reasonableness of the defendant's actions in light of the risk that he knew. *Brow v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."  *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).  Without evidence that a doctor linked the presentation of symptoms with a diagnosis of a serious medical condition, the subjective knowledge requirement is not met.  *Id*. at 169 (reasoning that actions inconsistent with an effort to hide a serious medical condition refute the presence of subjective knowledge).  Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference.  *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975) (concluding that, where a prisoner was under constant medical supervision, his claims did not rise to the level of deliberate indifference).

Henson has not indicated any specific conduct by Weber which supports an Eighth Amendment claim. Henson's medical records reveal that, although he regularly refuses to cooperate with medical staff, he is regularly treated by the medical department. ECF No. 21-2, at 1–2. Weber avers that he has neither deliberately nor maliciously denied medical treatment to Henson as alleged. *Id.* Henson has not provided any evidence to refute Weber's arguments, and thus his claims are subject to dismissal.

## CONCLUSION

For the reasons stated above, it is this 7th day of August, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that the Clerk **SHALL AMEND** the docket to reflect the correct name of Defendant Ronald Shane Weber; and it is further

**ORDERED**, that Plaintiff's Complaint against "Mental Health and Hygiene Psychological Medical Staff" is hereby **DISMISSED**; and it is further

**ORDERED**, that Defendant Ronald Shane Weber's Motion to Dismiss, or in the Alternative Motion for Summary Judgment (ECF No. 21), construed as a Motion for Summary Judgment, is hereby **GRANTED**; and it is further

**ORDERED**, that the Clerk **SHALL PROVIDE** a copy of this Order and the foregoing Memorandum Opinion to Plaintiff and counsel of record; and it is further

**ORDERED**, that the Clerk **SHALL CLOSE** this case.

_____
/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE